[No. 23363. Department Two. November 5, 1931.]

WOLTEN GROCERY COMPANY, *Respondent,* v. PUGET SOUND BRIDGE & DREDGING COMPANY, *Appellant.*[1]

*Roberts, Skeel & Holman* and *Trumbull, Severyns & Trumbull,* for appellant.

*Wright & Wright* and *Geo. D. Lantz,* for respondent.

[1]Reported in 4 P. (2d) 863.

BEALS, J.—Plaintiff corporation is the owner of a lot in the city of Port Angeles, lying near the margin of tidewater, running from Front street to Railroad avenue, upon which is situated a store building facing the former thoroughfare. The building covers approximately one-third of the lot, the remainder supporting a corrugated iron warehouse resting on piling. Plaintiff uses the building as its central grocery store and supply depot, furnishing from it stock for a number of other grocery stores which it maintains in the surrounding territory. The store rests on a concrete foundation, the walls of which form a basement which extends below the level of Front street, the walls going deeper than the level of the beach, the lines of ordinary high and low tide crossing the rear portion of the lot. The basement has a concrete floor constructed on the beach as leveled off from front to back, the rear portion thereof resting on about eighteen inches of fill.

During the year 1927, it was proposed to improve a portion of the city of Port Angeles, including plaintiff's property, by filling in the streets and certain private property to a level of about five feet above high tide. Plaintiff's president was one of the active advocates of the improvement, and, after appropriate proceedings, the city entered into two contracts with defendant providing for the improvement of the premises therein described, according to the plan above indicated; one contract called for filling the streets, the other for filling the private property. The work was practically one job, although divided into two contracts. Defendant proposed to accomplish the improvement by an hydraulic fill, and commenced dredging operations sometime after December 21, 1927, the date of the awarding of the contract. The work progressed from east to west, and was carried on under the

supervision of the city engineer. The land sloped to the west, affording a constant gravity drainage in that direction.

By July 1, 1928, the fill was approaching plaintiff's property, whereupon plaintiff's president and another property owner informed the city engineer that, unless the city would depart from its plan of bringing their particular tracts of property to the grade called for by the contract, they would endeavor to restrain the progress of the work by injunction proceedings, it being their desire that their property be left at a somewhat lower level, so as to permit the construction of basement rooms without requiring excavation. The city engineer directed defendant to conform to plaintiff's wishes in this matter, and plaintiff's property was therefore not filled to the level of the adjoining lots.

Upon opening the store on the morning of Monday, July 9th, it was discovered that between eighteen inches and two feet of water and silt had accumulated in the basement, a considerable quantity of plaintiff's merchandise having been damaged thereby. Within the time limited by law, plaintiff filed with the city of Port Angeles a claim for damages on account of this water seepage; and later plaintiff instituted this action against defendant, the city not being made a party. A trial to the court, sitting without a jury, resulted in a judgment in plaintiff's favor, from which defendant appeals.

Appellant assigns error upon the refusal of the trial court to grant its challenge to the evidence interposed at the close of plaintiff's case; upon the refusal of the trial court to grant judgment in defendant's favor; and upon the entry of judgment in favor of plaintiff and in awarding plaintiff damages in the amount for which judgment was entered.

The trial court found that the contract was entered into between appellant and the city, and that the same included the following provision:

"The contractor shall be held responsible for any damage to buildings, for mud flowing into basements, etc., and shall put up all necessary bulkheads, dikes or dams to hold the fills material in place and to prevent damage to property outside of this improvement district."

The court also found that appellant was not obligated to make the fill by any particular method, but that it was contemplated by the parties to the contract that the work was to be accomplished by hydraulic pumping, and that the two contracts were performed concurrently and as one improvement. The court further found that, during the progress of the work, respondent requested that the fill on its property between its store building and Railroad avenue be to a less height than as called for by the plans and specifications, and that this request was acceded to by the city of Port Angeles, and that appellant was directed to so far depart from the plans and specifications, and that this change resulted in a depression on the northerly part of respondent's property.

The court also found that the city engineer supervised the work and made no provision for waterproofing the basement walls of respondent's building, or for the employment of any means to protect the building against damage, and that the details of carrying out the work called for by the contract were left within the control of appellant; that, on or about July 8th or 9th, during the progress of the work, appellant, in the course thereof, caused water to stand against the basement walls of respondent's building to a depth of three or four feet; and that, as a direct and proximate result thereof, water and silt seeped through the walls and

flooded respondent's basement, damaging respondent's property stored therein and respondent's building in the total amount of $3,070.

The court also found that, in performing such work as appellant did under these contracts, it was customary and usual for the contractor to take certain measures to protect the walls of buildings against water; and that, if appellant had followed these methods, no damage would have resulted to respondent's building or property. The court also found that, prior to the commencement of this action, respondent filed its claim with the city of Port Angeles on account of its damage as hereinabove stated.

Respondent argues that its right of recovery is based upon appellant's alleged negligence in performing the work called for by its contract and upon its failure to employ the means customarily used by .contractors engaged in hydraulic filling to prevent the flooding of buildings adjacent to the property being filled.

Appellant contends that respondent cannot recover herein, for the reason that, in law, respondent must be held to have assumed the risk of consequential damages which might result from the fill, and that the damages shown by the evidence herein come within that classification. In this connection, appellant also bases its claim upon the fact that respondent, through its officers, signed the petition for the improvement, and thereby assumed some responsibility therefor. Appellant also bases its contention that it is not liable to respondent upon the change in the plans and specifications requested by respondent and agreed to by the city, whereby its property was filled to a level of approximately one foot lower than that called for by the plans, and hence to a lower grade than that to which adjoining properties were filled, appellant contending that this difference in grade caused water to gather in

the immediate vicinity of respondent's building, with the result that water seeped through the wall thereof. It is also contended that the damage was the result of inherent defects in respondent's building, and that for that reason no recovery should be allowed.

Appellant argues many legal propositions in support of its contentions, and cites many authorities. In its brief, appellant urges that the damage complained of by respondent must fall within one of five classifications as follows:

(1) Damage resulting from work "of a character from which damages are likely to arise unless precautionary measures are adopted" (when the contractee and not the contractor would be liable); or

(2) That the damage was consequential to the dredging operations (to be borne by respondent and not by the city); or

(3) Resulted from inherent defects in respondent's building, without reasonable opportunity of the city or appellant to know of such defects (where respondent again would assume liability); or

(4) Resulted from a change in the plans, made on the insistence of respondent, whereby the gravity flow of water away from the fill was disrupted so as to create a flood hazard and damage; or

(5) Occurred through wilful fault and negligence of appellant in disregarding or disobeying the contract, plans, specifications or orders of the engineer in charge (which situation appellant contends the evidence shows did not exist).

In support of its contention that it must be held that respondent assumed consequential damages resulting from the improvement, appellant cites the cases of *Larned v. Holt & Jeffery,* 74 Wash. 274, 133 Pac. 460, 46 L. R. A. (N. S.) 635, and *Ettor v. Tacoma,* 228 U. S. 148, and, on a later trial, *Ettor v. Tacoma,*

77 Wash. 267, 137 Pac. 820. Examination of these authorities shows that negligence in the performance of the work was not shown. The judgment in this case is based upon negligence, and the cases cited are therefore not in point.

Other authorities cited by appellant hold that a contractor, in carrying out a contract between himself and a municipal corporation, is not liable for damages to a property owner where the damage is bound to result from the work called for by the contract, whether or not the contractor executes the work carefully and is free from negligence. No such situation is here presented, and the authorities cited are not here in point.

In the case of *Kaler v. Puget Sound Bridge & Dredging Co.,* 72 Wash. 497, 130 Pac. 894, this court said:

"Negligence implies a wilful fault. In keeping with this principle it has been held by this, and generally by other courts, that where the fault lies in the plan furnished by the superior and the work is done under his direction, the contractor is not liable, in the absence of negligence. If negligent, he is held for his negligence and not as a trespasser. This case in principle and in many of its facts is not unlike the case of *Quinn v. Peterson & Co.,* 69 Wash. 207, 124 Pac. 502, where a recovery was denied. In *Potter v. Spokane,* 63 Wash. 267, 115 Pac. 176, it appeared that the damage for which a recovery was sought was caused by a defective bulkhead. It was held that, the plan being at fault, the contractor, who had done the work under a contract which 'provided that the work should be performed according to certain plans and specifications described in the contract, and should be under the supervision, direction and control of the board of public works of the city, and its representative, the city engineer; and that in case of improper construction and noncompliance with the contract, the board had the right to order a partial or entire reconstruction of the work, or to declare the contract forfeited and relet the same to another contractor, and to adjust the differences

that should arise between the city and the contractor by reason of the change;' was not liable,''

it being held that the defendant was not an independent contractor, and that the liability for the damages sustained by the property owner rested upon the city and not upon the contractor.

In our opinion, the facts of this case, as found by the trial court, bring it within the theory of the rule that, under the circumstances here shown, a contractor is liable for damages in cases where damage does not necessarily result from the carrying out of the contract, but accrued because of the negligent manner in which the contractor performed the work. *Engler v. Seattle,* 40 Wash. 72, 82 Pac. 136; *Curtis . v. Puget Sound Bridge & Dredging Co.,* 133 Wash. 323, 233 Pac. 936; *Small v. Seattle,* 139 Wash. 559, 247 Pac. 925, 48 A. L. R. 125; *Hillman v. Seattle,* 163 Wash. 401, 299 Pac. 514.

The testimony as to the proper method of carrying out the sluicing operations, by means of which the property embraced within the improvement district with which we are here concerned was filled, is in utter conflict. Witnesses on behalf of appellant testified that the method which it followed was the best, and that the methods outlined by witnesses who testified on behalf of respondent were not good. On the other hand, respondent introduced expert testimony to the effect that appellant's methods were faulty.

The trial court found that respondent suffered damage by reason of appellant's negligence. We are satisfied that this finding is supported by a preponderance of the evidence, and should not be disturbed.

In connection with appellant's contention that respondent's damage was caused by the change in the grade to which respondent's property was filled, we find nothing in the record which relieves appellant

from responsibility for the damage. Appellant's agents proceeded with the work under the modified plan, and we find no testimony which, as matter of law, calls for the relief of appellant from liability for the damage which respondent suffered.

■ Neither do we find any reason for disturbing the judgment in respondent's favor because respondent had joined in the petition for the improvement. Respondent was entitled to rely upon the principle that, in carrying out the improvement petitioned for, the contractor would not be guilty of negligently injuring his property. *Blomskog, etc., v. Seattle,* 107 Wash. 471, 182 Pac. 571; *Rainier Heat and Power Co. v. Seattle,* 113 Wash. 95, 193 Pac. 233.

■ Appellant contends that some advantage accrues to it because respondent filed its claim for damages with the city of Port Angeles. We find no merit in this contention, as no element of estoppel is present, and appellant's liability is nowise affected by the fact that such a claim was filed, and that later respondent elected to sue appellant without joining the city as party defendant. It does not appear that appellant requested the trial court to make the city of Port Angeles a party to the action, and we find no legal basis for any claim on appellant's part that it is entitled to take advantage of the action of respondent above referred to.

Appellant vigorously contends that the damages allowed by the trial court are excessive. The evidence in this connection is voluminous and conflicting, and an examination thereof convinces us that no modification should be made in the finding of the trial court.

This case does not fall within the classification outlined by appellant, but is controlled by other principles.

36

Finding no error in the record, the judgment appealed from is affirmed.

TOLMAN, C. J., MAIN, and MILLARD, JJ., concur.

HOLCOMB, J., concurs in the result.